UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| ROBERTS, JIM, | ) | |
| ROBERTS, TRACEY, | ) | |
| | ) | |
| Plaintiffs, | ) | No.: 1:17-cv-01017-JCH-KK |
| | ) | |
| v. | ) | |
| | ) | |
| HARRISON K-9 SECURITY SERVICES, | ) | |
| LLC, a Nevada Limited Liability Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

Defendant submits this memorandum and attachments in opposition to Plaintiffs' motion to remand.

## FACTUAL BACKGROUND

Plaintiffs rely on unverified and unsubstantiated allegations in their Complaint to set forth a very biased and hyperbolic background of facts that have little, if any, relevance to the issues before the Court on this motion to remand. Rather than waste the Court's time offering denials of these allegations, Defendant will limit itself to the facts that pertain to the motion before the Court.

Plaintiffs agreed to purchase a protection dog named Leo from Defendant in the amount of $50,000.00 in June 2016. Plaintiffs were unhappy with Leo and Defendant offered to replace Leo with Eyra pursuant to the contract between the parties. Prior to the transfer of Eyra to Plaintiffs, Defendant incurred direct out of pocket costs for the purchase, transport and initial training of Eyra in excess of $15,000.00. **Exhibit A**, *Declaration of November Holley,*

*11/14/2017*.  Plaintiffs requested that the replacement dog clause be reset in the event that Ms. Roberts did not bond with Eyra.  Defendant agreed and issued a new contract that provided for an additional replacement dog upon request of Plaintiffs.  **Exhibit B**, *Affidavit of November Holley, 3/02/17*.  There was a $10,000.00 difference in the purchase price between Leo and Eyra which Defendant agreed to make up through additional training.  Plaintiffs never requested a replacement for Eyra.

Plaintiffs filed their Complaint in December 2016 alleging breach of contract and a host of other claims.  Shortly thereafter, Plaintiffs demanded that Defendant pay a total $60,916.90 and they would return the dog to Defendant to resolve the lawsuit.  *Plaintiffs' Exhibit C to Motion to Remand*.  This settlement demand purportedly consisted of the $50,000.00 purchase price and all costs incurred with regards to either dog through December 2016.  Defendant made a motion to dismiss and compel arbitration which was not decided until June 26, 2017. *Plaintiffs' Exhibit E to Motion to Remand*.  On September 29, 2017, Plaintiffs issued a new settlement demand that was drastically different than the one issued in December 2016. Plaintiffs now sought a cash payment of $72,191.57 and would "keep ownership and possession" of Eyra.  *Plaintiffs' Exhibit H to Motion to Remand*.  As Defendants believed that Erya was worth the price agreed upon in the contract, or at the very minimum the amount paid and invested in Eyra before she was transferred to Plaintiffs, the amount in controversy clearly exceeded $75,000.00 and Defendant removed this action to this Court.

Subsequent to removal, the parties continued to engage in settlement negotiations.  On or about October 19, 2017, Justin Rodriquez, an attorney for Plaintiffs, called counsel for Defendant, and made a contingent demand to settle this matter.  That demand was the payment

of $70,000.00 and Plaintiffs would return the dog to Defendant, and a payment of only $50,000.00 if Plaintiffs were allowed to keep the dog.

## LEGAL STANDARD

In order for a federal court to have diversity jurisdiction, the amount in controversy must exceed $75,000. *28 U.S.C. § 1332(a)*. The "amount in controversy" has been defined by the Tenth Circuit Court of Appeals as "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting the assertion that the amount in controversy exceeds $75,000.00.'" *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The removing defendant bears the burden of proving the underlying facts supporting the assertion that the amount in controversy exceeds $75,000.00 by a preponderance of the evidence. *McPhail*, 529 F.3d at 955. In order for jurisdiction to be proper, the removing party has the burden of showing that the requisite amount in controversy is met. *McPhail*, 529 F.3d at 953.

The amount in controversy "is an estimate of the amount that will be put at issue in the course of the litigation. To this end, documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal . . ." *McPhail*, 529 F.3d at 956. Once it is shown that the amount in controversy may be greater than $75,000, the case belongs in federal court "unless it is legally certain that less than $75,000 is at stake." *McPhail*, 529 F.3d at 954.

A written demand from counsel may be an "other paper" under *§* 1446(b)(3) "from which it may first be ascertained that the case is one which is or has become removable." Several circuit courts have so held. *See Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 80 (1st Cir. 2014); *Babasa*

*v. LensCrafters, Inc.*, 498 F.3d 972, 975 (9th Cir. 2007); *Addo v. Globe Life & Acc. Ins. Co*., 230 F.3d 759, 762 (5th Cir. 2000). *See generally* Wright & Miller, *Federal Practice and Procedure* § 3731, at 524, 545 ("The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope . . . [including] correspondence between the parties and their attorneys or between the attorneys."). The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's estimate of its claim is a proper means of supporting the allegations in the notice of removal. *McPhail v. Deere & Co*., 529 F.3d at 956).

Plaintiffs are pursuing causes of action for breach of contract, breach of warranty, unjust enrichment and negligent misrepresentation. Under New Mexico law, parties may seek actual, incidental and consequential damages under a breach of contract theory. Moreover, a breach of the covenant of good faith and fair dealing is sufficient to justify the imposition of punitive damages under New Mexico law, and Plaintiffs specifically pled such a breach in Count VII of their Complaint. *Gilmore v. Duderstadt*, 125 N.M. 330, 961 P.2d 175 (1998). The damages available for negligent misrepresentation are:

> (1) those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

*First Interstate Bank of Gallup v. Foutz*, 107 N.M. 749, 764 P.2d 1307 (1988).

## LEGAL ANALYSIS

    *A.  Citizenship of the Parties*

Plaintiffs argue that because Defendant failed to use the term "citizen" as opposed to "resident" in its notice of removal.  Plaintiffs offer no evidence that the parties are not actually citizens of different states, they merely cite to an unpublished opinion for the proposition that their motion to remand should be granted.  Defendant attaches the case cited by Plaintiffs to demonstrate that Judge Browning actually denied the motion to remand in that case and ordered the removing party to amend their notice of removal.  In his findings, Judge Browning held:

> The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, like failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." *Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d at 301.

The attached *Declaration of November Holley (***Exhibit A***)* and *Harrison Prather (***Exhibit C***)* are proof that there is no legal way for Defendant to be a citizen of New Mexico.  As for Plaintiffs, Defendant merely restated what was averred in the Complaint, but is aware of no evidence that any Plaintiff is now or has ever been a citizen of either Nevada or South Carolina.

Defendant requests that it be allowed to amend its Notice of Removal to change the word "resident" to "citizen" in the requisite paragraphs.

B. *The Amount Demanded by Plaintiffs Exceeds $75,000.00 and Satisfies the Jurisdictional Amount Required for Federal Diversity Jurisdiction*

Defendant concedes that the amount demanded in the initial Complaint did not exceed $75,000.00.  Defendant further concedes that the initial settlement demands of Plaintiff did not exceed $75,000.00.  However, the official Offer of Settlement issued and filed in September 2017 clearly exceeds the jurisdictional amount and is the subsequent paper required by 28 U.S.C. § 1443(b) to justify a removal of this action after the initial 30 day deadline.  The record substantiates and proves that the amount in controversy exceeds $75,000.00 and there is no evidence that Plaintiffs can offer to demonstrate that it is legally certain that the amount in controversy is less than $75,000.00.

*New Mexico Rule 1-068*

The September 29, 2017 Offer of Judgment was issued and filed pursuant to Rule 1-068 of the New Mexico rules of civil procedure.  That rule states:

> A. *Offer of settlement. Except as provided in this rule, at any time more than ten (10) days before the trial begins, any party may serve upon any adverse party an offer to allow an appropriate judgment to be entered in the action in accordance with the terms and conditions specified in the offer. A claimant may not make an offer of settlement under this rule until one hundred twenty (120) days after the filing of a responsive pleading by the party defending against that claim. If within ten (10) days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon such judgment may be entered as the court may direct. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.*

> *If an offer of settlement made by a claimant is not accepted and the judgment finally obtained by the claimant is more favorable than the offer, the defending party must pay the claimant's costs, excluding attorney's fees, including double the amount of costs incurred after the making of the offer. If an offer of settlement made by a defending party is not accepted and the judgment finally obtained by the claimant is not more favorable than the offer, the claimant must pay the costs, excluding attorney's fees, incurred by the defending party after the making of the offer and shall not recover costs incurred thereafter. (Emphasis added).*

> *The fact that an offer has been made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, any party may make an offer of settlement, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than ten (10) days prior to the commencement of hearings to determine the amount or extent of liability.*

Under this Rule, Plaintiffs only benefit if the judgment obtained through a jury is greater than the one demanded in the Offer of Judgment.  More importantly, Plaintiffs are taking a substantial risk of having to pay the costs of the opposing party if their judgment does not exceed the amount ($72,191.57 and retention of a dog worth, at a minimum, $15,000.00) demanded in the Offer of Judgment.  This is not merely puffing or exaggeration for the purpose of negotiation, this is a calculated risk based on a belief that the case is worth more than the demand made in the Offer of Judgment.  Even if the unsubstantiated claims of Plaintiff were true that the dog is somehow worthless, the offer of judgment in and of itself demonstrates that Plaintiffs believe the case is worth more than the cash demand of $72,191.57.  Considering the costs in this matter will include veterinarian expert fees, depositions in New Mexico and South Carolina, security dog training expert fees, and the travel costs for the parties and counsel to appear in New Mexico for depositions and an eventual trial, it is implausible that those costs will not exceed $10,000.00.  Plaintiffs want this Court to believe that they would expose themselves to paying more than

$10,000.00 in costs by making a demand that was only $2,809.52 less than the maximum

possible amount of a verdict.  This is simply unbelievable.  It is clear that Plaintiffs believed that

this case involves more than $75,000.00 and the motion to remand must be denied.

*Plaintiffs' Own Words*

Plaintiffs' entire argument to prove that the amount in controversy is less than $75,000.00

is based on the allegation that Eyra has a "negative value."  Thus, Plaintiffs' offer of $72,191.57

and retaining the dog was a magnanimous gesture to save Defendant from incurring future

expenses for Eyra.  This is simply unbelievable and the statements of Plaintiffs directly

contradict this position.

Despite Plaintiffs' post removal averments to the contrary, the damages alleged by

Plaintiffs continue to grow as long as they maintain possession of Erya.  Plaintiffs make the

unsubstantiated and unsupportable claim that "Plaintiffs also discovered that Eyra had a medical

condition that Harrison K-9 did not disclose to them, for which Plaintiffs have incurred

expenses—but these expenses have not and will not exceed $25,000.00."  *Plaintiffs' Motion to

Remand*, p.7.  A review of the demands in chronological order demonstrates that this is simply

untrue.  In December 2016, Plaintiffs demanded $50,000.00 in refund of the purchase price,

$7492.04 in reimbursement for all costs incurred prior to taking possession of Eyra, and

$3424.86 in medical costs incurred after they obtained possession of Eyra.  This total was

$60,916.90.  Of this amount, the only costs that could increase over time would be medical costs

for Eyra, as all costs prior to taking possession to Eyra were fixed.  In September 2017, the

demand for reimbursement grew by $11,274.67.  It follows that Plaintiffs damages will continue

to increase at a rate of over $1,100.00 per month while this matter remains pending.   By those

calculations, Plaintiffs' out of pocket damages will eclipse $75,000.00 before the end of this

year.  Unless Eyra is miraculously cured of the unsubstantiated and still-unnamed "medical

condition", these costs will continue to accrue.  This does not even account for the retention of

Eyra and the potential punitive damage exposure under the Breach of Covenant of Good Faith

and Fair Dealing cause of action.

      Plaintiffs' position that Eyra is a "negative value" is directly contradicted by the

representations of counsel for Plaintiffs.  In May 2017, counsel engaged in email correspondence

with regards to settlement.  **Exhibit D**, *Email from Julia Crooks 5/11/17*.  In that email, Counsel

for Plaintiff states the following:

> We propose your client reimburses my clients for $50,000 and takes
> the dog back.  My clients will still be out at least ten thousand dollars,
> not to mention the significant amount in attorneys' fees, but your client
> will be in no worse of a position.  In fact, your client can still reap
> financial benefit by breeding Eyra, considering the excellent blood
> lines she has according to your client.  Eyra herself has medical
> problems, but she remains intact and from good breeding lines and
> your client is in the better position to take advantage of that.

In this email, Plaintiffs' counsel recognizes that the value of Eyra as a breeding animal and the

"financial benefit" that is attached to such activity.  This directly contradicts the Plaintiffs'

current argument that Eyra has a negative value.

      Plaintiffs spend a great deal of time attempting to argue that Defendant manufactured an

amount in controversy in excess of $75,000.00 by adding the price of the dog twice.  However, it

was not Defendant that added the value of the dog twice, it was Plaintiffs in their demand of

September 2017.  In their own words, Plaintiffs demanded a cash payment of $72,191.57 and the

possession and ownership of Eyra.  In their own words, Plaintiffs state that "[t]he dog's 'worth'

is exactly what is in dispute—that is the precise issue in the case—what *is* the dog worth? At

**most** its value is $50,000, what Plaintiffs paid for it" [*Plaintiffs' Motion to Remand*, p. 16] and

recognize that there is a "financial benefit by breeding Eyra." **Exhibit D**.  Therefore, Plaintiffs'

attempt to argue that Eyra has no value or negative value is unbelievable, unsubstantiated, and without merit.

Finally, after this case was removed, counsel again engaged in settlement negotiations. Counsel for Plaintiffs made a contingent offer of $70,000.00 and Plaintiffs would keep the dog, and $50,000.00 if the dog returned to Defendant. This demand, in and of itself, demonstrates that a value of $20,000.00 was placed on Eyra by Plaintiffs after this case was removed. Only now, in an attempt to manufacture grounds for removal, do Plaintiffs claim that Eyra has a negative value. This change in valuation is irrelevant to this Court's analysis. Defendant submits this Court's own words, from *Miranda v. Strike, LLC,* 2017 U.S. Dist. LEXIS 74051, to demonstrate that any post-removal change in valuation is irrelevant to determining the amount in controversy for purposes of jurisdiction:

> The Supreme Court squarely addressed this issue in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938). In *St. Paul*, the Court stated that where, as in that case, "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his [or her] pleadings, reduces the claim below the requisite amount, this does not deprive the court of jurisdiction." *Id.* at 292. Once the district court's jurisdiction attaches at the time of removal, post-removal events "which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his [or her] volition, do not oust the district court's jurisdiction." *Id.* at 293. The Supreme Court explained that
>
> > [w]e think this well established rule is supported by ample reason. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim ... fixes the right of the defendant to remove, and the plaintiff ought not be able to defeat that right and bring the cause back to state court at his [or her] election.
>
> *Id.* at 294. Under *St. Paul* and its progeny, it is well established that once the district court's diversity jurisdiction attaches at the time of removal, a plaintiff may not subsequently divest the court of jurisdiction and force remand to state court by reducing the amount in controversy. *See Miera v.*

> *Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (acknowledging
> the principle from *St. Paul* that "[o]nce jurisdiction has attached, events
> subsequently defeating it by reducing the amount in controversy are
> unavailing").

Plaintiffs cannot reduce their demands post-removal to manufacture a remand to state court.  The

settlement demands over the last year demonstrate a continuing increase in damages sought by

Plaintiffs, culminating in the September 2017 Offer of Judgment that clearly indicated Plaintiffs

believed they were entitled to recovery more than $75,000.00 in value from Defendants.  Based

on Plaintiffs' own demands, this Court cannot find that it is legally impossible for this case to

involve less than $75,000.00 as required by *McPhail*, and the motion must be denied.

## CONCLUSION

Defendant has proven that Eyra retains a value of at least $15,000.00 (the price paid for

her purchase, delivery and initial training) and additional value as a breeding dog.  These facts

alone demonstrate that the Offer of Judgment issued in September 2017 was well above the

$75,000.00 necessary to invoke diversity jurisdiction in this case and justify removal.  Moreover,

this does not account for the continuing increase in out of pocket costs claimed by Plaintiffs nor

the potentiality of punitive damages under the Breach of Covenant of Good Faith and Fair

Dealing cause of action.  Once Defendant satisfies this requirement, the Court can only remand if

it finds that it is legally impossible for the matter to involve more than $75,000.00.  Under the

law of New Mexico, Plaintiffs are entitled to recover the difference in value between the

purchase price and the value of Eyra (which would exceed $50,000.00 if the dog has a negative

value) and all other costs associated with their reliance in the misrepresentation or incidental to

the alleged breach of contract.  Over the course of 10 months, those additional pecuniary losses

increased from $3424.86 to $11,274.67 according to Plaintiffs.  The potentiality of punitive

damages increases the amount in controversy even further.  The only way these damages can stop at $75,000.00 is by some waiver or relinquishment by Plaintiffs after removal, which is ineffective to justify a remand.  This Court cannot find that it is legally impossible to recover more than $75,000.00 in this case and the motion to remand must be denied.

This 16th day of November, 2017

/s/Richard N. Feferman
FEFERMAN & WARREN
300 Central Avenue, SW
Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773 phone
(505) 243-6663 fax

/s/Tucker S. Player, Esq.
PLAYER LAW FIRM, LLC
*Pro Hac Vice Pending*
1415 Broad River Road
Columbia, South Carolina 29210
Phone: 803-772-8008
Fax: 803-772-8037
E-mail: tucker@playerlawfirm.com