IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERTS, JIM,
ROBERTS, TRACEY,

      Plaintiffs,

v.                                                                                      Civ. No. 17-1017-JCH-KK

HARRISON K-9 SERVICES, LLC,
A Nevada Limited Liability Company,

      Defendant.

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO REMAND

### I. INTRODUCTION

Defendant appears to have conceded that its stated basis for removal in its Notice of Removal was wrongful and improper by adding the price of the dog twice (plus an unspecified $10,000) to claim Plaintiffs demanded $132,191.57, since its Response consists of entirely new (yet equally unsupported) implausible allegations to attempt to justify its removal. Since Plaintiffs demanded $72,191.57, not the $132,191.57 Defendant claimed they demanded, they filed a Motion to Remand this case to state court (Doc. 9). They thoroughly explained that as a matter of law, the only amount in controversy under the allegations of the Complaint filed herein is the offer to settle for $72,191.57. The offer to keep the dog as well adds no additional amount to the amount in controversy that Plaintiffs stand to recover under the present state of the pleading filed herein, as Plaintiffs could recover no more than their actual past and future out-of-pocket expenses at trial—which in their own estimation totaled $72,191.57. Defendant continues to rely upon the logical fallacy that any amount the dog might ultimately found to be worth should be *added* to the

1

$72,191.57 Plaintiffs offered.  As Defendant itself notes in its Response, the damages for negligent representation, for example, are "'the difference between the value of what he has received and its purchase price[.]'" Doc. 13 at 5 (quoting *First Interstate Bank of Gallup v. Foutz*).  Of course, under no theory they alleged in the Complaint could Plaintiffs recover what they paid for the dog and get to keep a dog "worth" the amount they paid.[1]  Whatever the value the dog has—if any— would be deducted from their pecuniary damages at trial.  All Plaintiffs stand to recover under the allegations of the Complaint is therefore determined by the following equation: **Plaintiffs' pecuniary damages – value of dog (if any) = amount in controversy**.  By Plaintiffs own estimation, that amount is $72,191.57, as reflected by their Offer of Settlement.  Doc. 1-2.

Now implicitly conceding that its allegations were implausible, Defendant abandons in its Response any mention or explanation whatsoever of the $132,191.57 estimate it based its Removal upon and instead, impermissibly furnishes conclusory, implausible, entirely new allegations that were absent from its Notice of Removal and which are unsupported by any admissible evidence in attempt to justify its wrongful removal.  The Court should reject consideration of the allegations furnished for the first time in Defendant's Response as a matter of law and award Plaintiffs their attorneys' fees incurred as a result of Defendant's wrongful removal.

**II. DEFENDANT'S NOTICE OF REMOVAL LACKED PLAUSIBLE ALLEGATIONS THAT THE AMOUNT IN CONTROVERSY IS THE $132,191.57 ESTIMATE IT STATED IN THE NOTICE.  DEFENDANT CANNOT CURE THIS JURISDICTIONAL DEFECT BY ATTEMPTING TO FURNISH MISSING ALLEGATIONS.**

A defendant seeking removal to federal court must "include in the notice of removal a *plausible* allegation that the amount in controversy exceeds the jurisdictional

---

[1] Plaintiffs stated in their Motion that the jury could not award Plaintiffs the dog since they revoked acceptance in the Complaint.  Of course, in actuality, it would depend on which counts Plaintiffs prevailed upon at trial.  Under certain theories Plaintiffs alleged in the alternative to revoking acceptance in the Complaint, such as their claim for negligent misrepresentation (Doc. 1-4, Count IX), Plaintiffs would keep the dog and be awarded the difference in what they paid and what the dog is worth.

threshold." *See Swiech v. Fred Loya Ins. Co.*, 2017 WL 3835807, at *12 (D.N.M. Aug. 31, 2017). When the plaintiff contests the allegations, the removing defendant, as proponent of federal jurisdiction, must satisfy the amount-in-controversy requirement by establishing by a preponderance of the evidence "what the plaintiff *stands to recover*." *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (emphasis added); *Swiech*, 2017 WL 3835807, at *12.

In its Notice of Removal, Defendant estimates that the amount in controversy is "$132,191.57." Doc. 1 at 2. Defendant provided no plausible allegations to support this estimation. *Id.* Defendant provides absolutely no explanation of how it derived that sum. *Id.* Defendant claims that Plaintiff demanded that amount, *id.* at 2, ¶ 6, but Plaintiff's Offer of Settlement was for $72,191.57, not $132,191.57. *See* Doc. 1-2.

Notably absent from Defendant's Response, Doc. 13, is *any mention whatsoever* of the "factual allegations that support the estimate" totaling $132,191.57 that it claims is at issue, let alone any explanation supported by "admissible evidence" that $132,191.57 is the amount Plaintiffs "stand to recover." *See McPhail*, 529 F.3d at 954. Apparently Defendant has conceded that its Notice of Removal lacked plausible allegations that the amount in controversy totals $132,191.57 since it makes no attempt to prove these allegations are possible by a preponderance of the evidence. In fact, Defendant in its Response abandons any attempt to explain or establish what Plaintiffs "stand to recover" at all, now only repeating that the amount in controversy "exceeds $75,000"—at some unspecified amount. *See* Doc. 13, *e.g.* at 6.

Instead, Defendant asserts the new, unsupported allegations that were missing from its Notice of what Plaintiffs must truly and actually "believe" is the value of their case under the allegations of their Complaint. Defendant cannot meet its burden by raising entirely new allegations that were missing from its Notice of Removal. Whatever leeway the Court gives Defendant to file an amended notice of removal to cure its procedural defects in properly alleging

citizenship, must be limited to such procedural defects. The Court cannot accept the newly furnished allegations that form an entirely different basis for removal. As Judge Browning recently explained:

> There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain: [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, **state the previously articulated grounds more fully**, or clarify the jurisdictional amount. In most circumstances, however, **defendants may not add completely new grounds for removal or furnish missing allegations**, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

*Swiech*, 2017 WL 3835807, at *10 (emphasis added) (citing 14 C. Wright & A. Miller, *Federal Practice and Procedure* § 3733, at 651–659 (4th ed. 2009).

Because Defendant failed to supply any plausible allegations in its Notice of Removal Plaintiffs stand to recover $132,191.57 (which it has apparently conceded since it abandons that estimate), the Court should grant Plaintiffs' Motion to Remand. Since Defendant would not be permitted under federal law to amend its deficient Notice of Removal by adding the new grounds for removal and furnishing missing allegations, the Court certainly should not consider such new grounds and missing allegations raised for the first time in its Response brief. The Court should grant the Motion without further consideration.

Plaintiff nonetheless responds to the entirely new allegations below to demonstrate that even if Defendant had raised these allegations in the Notice of Removal and based the amount in controversy on these allegations in the Notice, the newly furnished allegations raised for the first time in its Response brief do not meet the plausibility standard, nor has Defendant met its burden of proving them by a preponderance of admissible evidence.

### III. DEFENDANT FAILED TO MEET ITS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE FACTS SUPPORTING ITS ENTIRELY NEW GENERAL ASSERTION THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

Defendant's Response only offers speculation and asks the Court to engage in a credibility analysis of what Plaintiffs must actually believe the value of their case to be, and to disbelieve the amount they actually estimated of $72,191.57. Doc. 13 at 7 (two times), 8 (two times), 10, 11.

Defendant relies on the proposition in *McPhail v. Deere* that "documents that demonstrate *plaintiff's own estimation of its claim* are a proper means of supporting the allegations in the notice of removal." Doc. 13 at 3 (citing 529 F.3d at 956). But Plaintiffs' own estimation of its claim was its Offer of Settlement for $72,191.57. *See* Doc. 1-2. By Plaintiffs' own estimation, the dog has no monetary value—hence they are entitled to all of their out-of-pocket expenses, as reflected in their Offer of Settlement. Defendant acknowledges that Plaintiffs only demanded $72,191.57, but assert that "Plaintiffs believe the case is worth more than the cash demand of $72,191.57." Doc. 13 at 7. In *McPhail*, the plaintiff did not plead an amount of damages and refused to estimate the damages, but plaintiff's counsel also sent a letter stating that the amount in controversy "very well may be" in excess of $75,000. 529 F.3d at 957. The Tenth Circuit concluded the evidence that the plaintiff's "attorneys also *believed* the amount in controversy 'very well may be' in excess of $75,000" was relevant to finding jurisdiction. *Id.* (emphasis added)

The circumstances in this case are entirely disparate to those in *McPhail*. Plaintiffs' own estimation of its claim was $72,191.57—and there is no evidence that it has ever exceeded that. And unlike *McPhail*, which involved claims for non-pecuniary losses such as loss of consortium and pain and suffering and wrongful death damages in addition to the plaintiff's pecuniary losses, there is no uncertainty about the amount of damages at issue because Plaintiffs' claims under the present state of the pleading filed herein are for actual, consequential, and incidental damages— they have no claims for non-pecuniary losses like emotional distress or pain and suffering that may

5

be subject to a plaintiff's "belief" as to their value. The Roberts suffered measureable quantifiable, pecuniary losses in this case that can be calculated to a certainty and require no speculation or belief about the value of the losses. The only evidence of Plaintiffs' estimation of their damages is the Offer of Settlement of $72,191.57. Defendants manufactured amounts and speculate and count expenses twice to exceed that figure. Defendant had the burden to provide the Court with facts supported by admissible evidence, not speculation about Plaintiffs' beliefs.

### A. Defendant Misinterprets Rule 1-068 NMRA to Conclude Plaintiffs Must Believe They Stand to Recover More Than $75,000.

Defendant's entire Rule 1-068 argument, Doc. 13 6-8, relies on the false premise that by making an offer of settlement for $72,191.57, Plaintiffs "clearly" believed the amount at issue to be much more than $75,000. Defendant's Response emphasizes the part of Rule 1-068(A) that provides:

> If an offer of settlement *made by a claimant* is not accepted and the judgment finally obtained by the claimant is more favorable than the offer, the defending party must pay the claimant's costs, excluding attorney's fees, including double the amount of costs incurred after the making of the offer. If an offer of settlement *made by a defending party* is not accepted and the judgment finally obtained by the claimant is not more favorable than the offer, the claimant must pay the costs, excluding attorney's fees, incurred by the defending party after the making of the offer and shall not recover costs incurred thereafter.

Doc. 13 at 7 (emphasis added). Defendant then completely misinterprets Rule 1-068 to make the patently false statement: "Plaintiffs are taking a substantial risk *of having to pay the costs of the opposing party* if their judgment does not exceed the amount ($72,191.57 . . .) demanded in the Offer of Judgment [sic]. This is not merely puffing or exaggeration for the purpose of negotiation, this is a calculated risk based on a belief that the case is worth more than the demand made in the Offer of Judgment." *Id.* (emphasis added). Apparently Defendant is attempting to apply the Rule's conditions that would apply if *Defendant* had been the party who made the offer of $72,191.57 and Plaintiffs had rejected it (the obverse of what actually occurred)—which is the only scenario

under which Plaintiffs would ever be responsible for Defendant's costs incurred after the offer made (and only if they recovered less than $72,191.57 at trial). The Rule does *not* state that if an offer of settlement made by the claimant is not accepted and the claimant recovers less than the amount offered then the claimant must pay the defending party's costs. If Plaintiffs recover less than $72,191.57 at trial, under no circumstances will they have to pay Defendant's costs. *See Ezelle v. Bauer Corp.*, 154 F.R.D. 149, 152 (S.D. Miss. 1994) ("Rule 68 requires a 'prevailing' plaintiff to pay the costs of litigation in the single circumstance covered by the rule: where the plaintiff does not accept **the defendant's offer of judgment** which is more favorable than the judgment the plaintiff ultimately obtains." (emphasis added) (citing *Delta Airlines v. August,* 450 U.S. 346 (1981))). All that happens if Plaintiffs prevail and recover less than $72,191.57 is Plaintiffs will not get to recover double their costs (the incentive for making such and offer and the risk the defendant exposes itself to by rejecting the offer).

Based on Defendant's misinterpretation of Rule 1-068, Defendant goes on to argue that the offer of judgment in and of itself demonstrates that Plaintiffs believe the "case is worth more than the cash demand of $72,191.57" considering that they have "expose[d] themselves to paying more than $10,000.00 in costs by making a demand that was only $2,809.52 less than the maximum possible amount of a verdict." Doc. 13 at 7-8. Since Plaintiff has no such exposure, Defendant's entire argument regarding Rule 1-068 on pages 6-8 of the Response is nonsensical and fails.

**B. Defendant's Other Arguments Regarding What Plaintiffs Must Truly Believe They Stand to Recover Are Purely Based on Speculation and Are Not Supported by Any Admissible Evidence.**

First, Defendant engages in rank speculation to insist that "Plaintiffs damages will continue to increase at a rate of over $1,100.00 per month while this matter remains pending" and "Plaintiffs' out of pocket damages will eclipse $75,000.00 before the end of this year." Doc. 13 at 8-9. They say Plaintiffs' estimation of the vet expenses is "simply untrue" by engaging in

7

speculation regarding the expenses Plaintiffs' have incurred based on their settlement offers. Doc. 13 at 8. Defendant offers no facts that the expenses are or will be more—nor could it possibly since Plaintiffs are the ones with knowledge of the medical condition and its associated expenses. It is Defendant's burden to supply facts supported by admissible evidence that the bills will total more than what Plaintiffs accounted for in their Offer of Settlement. It did not. Defendant cannot justify removal by grasping at dollar figures with no regard to whether Plaintiffs have actually made a claim for those amounts. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1291 (10th Cir. 2001) (opining "it appears defendants simply viewed every dollar amount mentioned in the complaint as an item of damages claimed by the Martins without regard to allegations making clear the Martins were not in fact seeking all those amounts"), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547 (2014). The only amount Plaintiffs actually sought in this case is $72,191.57.

    Second, Defendant attempts to defeat Plaintiffs' valuation of the amount in controversy and their position that the dog has no (or negative sum) monetary value by referencing Plaintiffs' observation during settlement discussions—that occurred five months before Defendant filed its Notice of Removal (Doc. 13-4)—that perhaps Eyra could still be of some value **to Defendant** if Defendant bred and sold her trained puppies. Doc. 13 at 9. Defendant is the one in the business of selling dogs. Moreover, Defendant did not provide **facts** as to the value of any potential breeding, let alone facts supported by evidence. But most importantly, again, whatever value the dog has—if anything—as a pure bred, for security, or for breeding would be deducted from the monetary damages Plaintiffs stand to recover—not added to it. **[Plaintiffs' pecuniary damages – value of dog (if any) = amount in controversy]** Defendant again relies on its logical fallacy to justify its improper removal.

Finally, Defendant attempts to use its *own* belief as to the amount the dog is worth to defend its Removal, stating "As Defendants [sic] believed that Erya was worth the price agreed upon in the contract, or at the very minimum the amount paid and invested in Eyra before she was transferred to Plaintiffs, the amount in controversy clearly exceeded $75,000.00 and Defendant removed this action to this Court." Doc. 13 at 2. Defendant is forgetting that it has relied upon *Plaintiffs'* "own estimation" of the amount they stand to recover under the present state of the pleading filed herein—that estimate was uncontrovertibly $72,191.57 and keeping a dog with no value. It doesn't matter what Defendant believed. And again, even accepting as true the fact Defendant paid $15,000 for the dog does not mean Plaintiff stood to recover more than $72,191.57 at the time of Removal. If the jury ultimately believes the dog is worth the $15,000 Defendant purportedly paid for it, that amount would be *deducted* from the cash amount in controversy.

Throughout Defendant's briefing, it failed to answer the key question—on what factual and legal basis would Plaintiff stand to recover any more than $72,191.57 under the present state of the pleading filed herein? Defendant has asserted many impermissible new arguments, but none are supported by facts established by a preponderance of admissible evidence. Defendant simply has not met its burden.

### C. Any Removal Based on a Claim for Punitive Damages—Had Plaintiff Actually Claimed Punitive Damages—and Had the Removal Actually Included Allegations Based on the Punitive Damages—Would Have Been Untimely.

Defendant injected an additional untimely proposed basis for removal raised for the first time in its Response on the basis that the amount in controversy exceeds $75,000 because of the potential for punitive damages based on the breach of the covenant of good faith and fair dealing claim (Doc. 1-4 at 21 (Count VII)). *See* Doc 13 at 4, 9, and 11.

First of all, of course, in order to be entitled to such damages, they must be pleaded, and Plaintiffs did not plead for punitive damages anywhere in their Complaint. *See Cordova v. New*

9

*Mexico Taxation & Revenue Dep't*, 2011 WL 7164459, at *42, n. 22 (D.N.M. Dec. 28, 2011) (stating that if a plaintiff "seeks punitive damages, she **must plead** and prove them as relief for each count" under which they are sought (emphasis added)); *cf. Dominick v. Paper Mach. Corp.*, 2004 WL 2278766, at *2 (D. Kan. Mar. 25, 2004) ("[P]unitive damages may be awarded to punish a wrongdoer for malicious, vindictive, or willful and wanton invasion of another's rights. As such, in order to recover punitive damages, a plaintiff must both *plead* and prove that defendant's conduct was willful, wanton, fraudulent, or malicious."). The word "punitive" appears nowhere in the Complaint. *See* Doc. 1-4. Plaintiffs' only references to damages under the allegations of the Complaint filed herein are as follows:

> Consequently, Plaintiffs are entitled to the return of all monies paid to Defendant as well as incidental and consequential damages incurred as a result of the Purchased Goods' nonconformities, including the costs associated with treating the undisclosed medical condition of the Purchased Goods, and all other damages allowable under law, all in amounts to be proven at trial, but in a total amount less than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

Doc 1-4, ¶¶ 69 (emphasis added).

> Because the Contract is unenforceable for unconscionability, Plaintiff seeks rescission of the Contract and damages in an amount to be determined at trial, but in a total amount less than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

Doc 1-4, ¶¶ 99 (emphasis added). Plaintiffs' good faith and fair dealing count requests the following relief:

> Plaintiffs have been damaged as a direct, proximate and reasonably foreseeable result of Defendant's breach of the implied covenant of good faith a fair dealing and other acts and omissions and are entitled to judgment therefor as pleaded below.

Doc 1-4, ¶ 128.

And the "judgment therefor as pleaded below" states as follows, specifically disclaiming a sum exceeding $75,000:

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:
1) Against Defendant in an amount to be determined at trial but not exceeding the total sum or value of $75,000, exclusive of interest and costs, and
2) For such other and further relief as the Court deems appropriate, including without limitation applicable costs.

Secondly and more importantly, even if Plaintiffs had pleaded for punitive damages in their Complaint, removal on this basis—if Defendant had in fact even removed on this basis (which it did not)—is woefully untimely. Plaintiffs filed and served their Complaint on December 2, 2016. *See* Doc. 1-4. Under 28 U.S.C. § 1446(b)(1) (2011), a notice of removal on the basis of the allegations in the Complaint "shall be filed within 30 days" after the defendant receives the Complaint. As Plaintiffs have emphasized, Defendant did not remove on the basis that amount in controversy exceeds $75,000 based on punitive damages. Instead, Defendant committed the logical fallacy of counting damages at issue twice to formulate the basis for removal as set forth in its Notice. *See* Doc 1. But even if Defendant's notice of removal *had* based the removal on the potential for punitive damages caused the amount in controversy to exceed $75,000 (and that was somehow sufficient even though Plaintiffs made no claim for punitive damages), Defendant mentioned punitive damages for the first time almost a *year* after Plaintiffs filed the Complaint— many months after the thirty-day deadline for removal—January 1, 2017. Thus, for these many reasons, the fact that the potential for punitive damages in *some* cases where the plaintiff specifically pleads punitive damages has no impact on the amount in controversy in this case.

### D. Plaintiffs Did Not Rely on Post-Removal Events in Their Motion.

Defendant's discussion, Doc. 13 at 10, of this Court's opinion in *Miranda* is confusing. Plaintiffs did not attempt to use post removal conduct to change the amount in controversy. Plaintiffs have consistently maintained that the amount in controversy has at no time—including the time of removal—exceeded $72,191.57.

## IV. PLAINTIFFS ARE ENTITLED TO RECOVERY OF THEIR ATTORNEYS' FEES INCURRED AS A RESULT OF DEFENDANT'S IMPROPER REMOVAL.

A federal court remanding a removed case to state court should award attorney's fees under 28 U.S.C. Section 1447(c) when the removing party lacks an objectively reasonable basis for seeking removal. *See Porter Trust v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1,* 607 F.3d 1251, 1253 (10th Cir. 2010).

This Court awarded the plaintiff their attorney's fees in *ACC Health, LLC v. Lost Creek Holdings, LLC* for the defendant's wrongful removal, opining that the fact that the defendants "lacked objectively reasonable grounds to remove" (because the Notice of Removal contained no allegations supporting diversity of citizenship) was "confirmed by their actions after removal", since they "could have acknowledged that they lacked any reasonable basis to assert the complete diversity of the parties, and they could have moved to remand" but instead they demanded information regarding the plaintiff's citizenship—which was "improper", and rather than "acknowledge[ing] the problem", they "protracted the dispute." 2017 WL 3530380, at *3 (D.N.M. Aug. 16, 2017).

The Court is faced with the same situation here—albeit on amount in controversy grounds instead of diversity of citizenship (notwithstanding the Notice's defects regarding citizenship). Defendant lacked objectively reasonable grounds to remove because Defendant's claim that Plaintiff demanded $132,191.57 was not objectively reasonable and was unsupported by any plausible allegations in the Notice, which Defendant has implicitly admitted since its Response abandoned the $132,191.57 figure —not even mentioning it let alone attempting to establish facts that support it.  Defendant could "could have acknowledged that they lacked any reasonable basis" for the $132,191.57 figure and consented to the remand, but instead they refused to "acknowledge the problem" and "protracted the dispute" by attempting to justify its removal on completely

12

different bases and furnishing new allegations that were not the subject of the Notice of Removal and were equally unsupported by facts established by admissible evidence.

For these reasons and the reasons stated in Plaintiffs' Motion, the Court should reject consideration of the allegations raised for the first time and supported by facts established by a preponderance of admissible evidence in Defendant's Response and award Plaintiffs their attorneys' fees.

          Respectfully submitted,

          ATKINSON, BAKER & RODRIGUEZ, P.C.

*/s/ Julia E. Crooks*
Julia E. Crooks
Clifford K. Atkinson
Justin D. Rodriguez
201 Third St. NW, Suite 1850
Albuquerque, NM 87102
(505) 764-8111
jcrooks@abrfirm.com
catkinson@abrfirm.com
jrodriguez@abrfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 1st day of December, 2017 I filed the foregoing *Plaintiffs' Reply in Support of Their Motion to Remand* electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

FEFERMAN & WARREN, LLC
Richard Feferman, Esq.
300 Central Avenue, SW Suite 2000
Albuquerque, NM 87102
(505) 243-7773
rfeferman@msn.com


PLAYER LAW FIRM, LLC
Tucker S. Player, Esq.
1415 Broad River Road
Columbia, South Carolina 29210
803-772-8008
tucker@playerlawfirm.com

ATKINSON, BAKER & RODRIGUEZ, P.C.

*/s/ Julia E. Crooks*
Julia E. Crooks