IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIM ROBERTS and TRACEY[1] ROBERTS,

    **Plaintiffs,**

vs.                                          Civ. No. 17cv1017 JCH/KK

**HARRISON K-9 SECURITY SERVICES, LLC,**
a Nevada Limited Liability Company,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER OF REMAND

This matter is before the Court on *Plaintiff's Motion to Remand* [Doc. 9], filed November 3, 2017. The Court has also reviewed Defendant's response and Plaintiff's reply. After reviewing the briefs, the law, and the evidence provided on jurisdiction, the Court concludes that the motion should be granted and the case remanded to the Second Judicial District Court, County of Bernalillo, New Mexico.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2016, Plaintiffs Jim and Tracey Roberts ("Plaintiffs") filed their Complaint for Damages [Doc. 1-4] in the Second Judicial District Court, County of Bernalillo, State of New Mexico.

According to the complaint, in early 2016, during a rash of crime in their neighborhood, Plaintiffs purchased a personal protection security dog from Defendant Harrison K-9 Security

---

[1] The caption on Defendant's Notice of Removal [Doc. 1] refers to one of the Plaintiffs as "Stacy Roberts," leading to the use of the misnomer on several subsequent pleadings. However, it appears that this was an error by Defendant and that her name is, in fact, Tracey Roberts as set forth in the original complaint.

Services, LLC ("Harrison"). Harrison sells its trained canines for anywhere from $30,000 to several hundred thousand dollars, representing that the cost reflects the fact that the dogs are expertly trained personal protection dogs that are not only great companions, but also gentle with children. Harrison represented to Plaintiffs over the course of several conversations that it could supply them with the best family watch dog available of superior quality and training. As a result, Plaintiffs purchased from Harrison a purebred male German Shepherd named Leo for the price of $50,000. Plaintiffs paid Harrison an additional $7,073.20 to deliver Leo to New Mexico and conduct on-site training at their home. On June 27, 2016, a Harrison K-9 trainer did deliver Leo to Plaintiffs' home in New Mexico and conduct a two-day training session to teach Plaintiffs the German commands and hand signals necessary to control the dog. At that time, Plaintiffs noticed that Leo had an odd gait and was limping, but when they pointed it out the trainer said that it was normal for a "true German Shepherd" from Germany. Unconvinced, on June 29, 2016, Plaintiff Tracy Roberts took Leo to a veterinarian for an exam and x-rays, which revealed chronic changes in Leo's left hip. The following day, Plaintiffs requested that Harrison provide them with Leo's prior x-rays for comparison purposes. Those x-rays, taken on June 5, 2015 in Germany appeared to show a healthy hip, but also appeared to have been from a different dog. Harrison continued to insist that Leo was healthy.

Rather than admit that Leo had a medical defect that made him unsuitable for sale, Harrison offered to exchange Leo for another dog, Eyra, who also allegedly had a German and internationally certified pedigree. Eyra cost only $40,000, but Harrison refused to refund Plaintiffs the $10,000 difference. Instead, Harrison offered to send trainers to Plaintiffs' home in New Mexico for "touch up" training of Eyra to account for the difference in price. Plaintiffs agreed, and on July 13, 2016, two Harrison K-9 trainers delivered Eyra to Plaintiffs. They

conducted the training and the next day produced a contact for Plaintiff Tracey Roberts to sign. The contract [Doc. 9-1 at 27 of 34] states: "In consideration for the return of [Leo] by buyer, Harrison K-9 agrees to exchange and buyers agrees to accept [Eyra], a security dog that has been trained for Personal Protection." However, the contract did not address the additional $10,000 worth of "touch up" training of Eyra, so Ms. Roberts objected and offered to write in the provision by hand. The Harrison trainers refused, stating that they would leave and take Eyra with them if she did not sign the pre-printed contract as it was. Feeling that she had no choice, Ms. Roberts signed the contract.

Later that day, Ms. Roberts contacted Defendant's manager, Ms. Holley, to discuss the omission of the $10,000 from the written contract. Ms. Holley stated that no changes could be made to Harrison's standard form of contract, but that Plaintiffs had Harrison's word that the additional trainings would be conducted so that they received the full value of the $50,000 they had paid.

On two occasions during the following month, Ms. Roberts gave Eyra the command to bark and guard in response to someone Ms. Roberts perceived as a threat. However, Eyra ignored her repeated commands. Later, when Plaintiffs' dog-breeder friend came to their house, Ms. Roberts gave the command to bark and guard, and again Eyra ignored the commands. However, when the friend held a bite pillow and a tug in her hands, Eyra followed the commands. Ms. Roberts called and left a message for Ms. Holley, who did not return the call. Further, Plaintiffs allege that at the time of delivery Eyra had a medical condition that Harrison did not disclose which affects her energy level, prevents her from providing protection, and which cannot be cured.

On December 2, 2016, Plaintiffs filed their complaint in the Second Judicial District Court, County of Bernalillo, New Mexico. Doc. 1-4. They assert claims for revocation of acceptance, breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of the covenant of good faith and fair dealing, unjust enrichment, and negligent misrepresentation. They also seek a finding that the contract is void for unconscionability. With regard to damages, Plaintiffs' complaint states:

> Plaintiffs are entitled to the return of all monies paid to Defendant as well as incidental and consequential damages incurred as a result of the Purchased Goods' nonconformities, including the costs associated with treating the undisclosed medical condition of the Purchased Goods, and all other damages allowable under law, all in amounts to be proven at trial, but in a total amount less than seventy-five thousand dollars, exclusive of interest and costs.

Doc. 1-4 at ¶ 69.[2]

On October 6, 2017, Harrison removed the case to this federal district court. According to the Notice of Removal [Doc. 1], there was diversity between the parties and the amount in controversy exceeds $75,000. As grounds for the latter, Harrison cited Plaintiffs' Rule 1-068 Offer of Judgment [Doc. 1-2], in which Plaintiffs asked to recover $72,191.57 as well as to retain possession of the dog Eyra. Because Harrison values Eyra at $50,000, Harrison construed the Offer of Judgment to be a demand for $132,191.57. Doc. 1 at 2.

On November 30, 2017, Plaintiffs filed their motion to remand on the grounds that the amount in controversy was not satisfied.

---

[2] Elsewhere in the complaint, Plaintiffs state that they seek "rescission of the Contract and damages in an amount to be determined at trial, but in a total amount less than seventy-five thousand dollars exclusive of interest in costs." Doc. 1-4 at ¶ 99. *See also id*. at p.24 ("Prayer for Relief").

## **LEGAL STANDARD**

Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076 (10th Cir. 1999) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Nonetheless, federal courts "are to ... narrowly [construe removal statutes] in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case. *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires: (i) complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The Supreme Court of the United States has described this statutory diversity requirement as "complete diversity," and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267-68, 2 L.Ed. 435 (1806), overruled in part by *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail*, 529 F.3d at 956.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. at 554. The district court should consider outside evidence and find by a preponderance of

the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). That is the circumstance presented here.

## DISCUSSION

I. **Defect in Diversity Allegations**

Plaintiffs point out that Harrison's notice of removal is procedurally defective because it alleges the *residences* of the various parties, but not their places of citizenship as required by 28 U.S.C. § 1332. Further, Plaintiffs argue that Harrison alleges that it is a "Nevada LLC," [Doc. 1 at ¶ 3], but such an allegation is insufficient because the citizenship of a limited liability company is determined by the citizenship of all of its members. *Siloam Springs Hotel, LLC v. Century Surety Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). In response, Harrison provides affidavits that support the conclusion that there is, in fact, complete diversity of citizenship among the parties and asks to be permitted to amend its notice of removal to reflect that fact.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. *See Jenkins v. MTGLQ Investors*, 218 Fed. Appx. 719, 723 (10th Cir. 2007) (unpublished) (granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); *Watkins v. Terminix Int'l Co.*, Nos. 96-3053, 96-3078, 1997 WL 34676226, at *1, 1997 U.S. App. LEXIS 36294, at *2 (10th Cir. May 22, 1997) (reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); *Lopez v. Denver & Rio Grande W.R.R. Co.*, 277 F.2d 830, 832 (10th Cir. 1960) ("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further

6

reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, like failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." *Hendrix v. New Amsterdam Cas. Co*., 390 F.2d 299, 301 (10th Cir. 1968).

The Court concludes that under other circumstances Harrison should be permitted to amend its notice of removal in order to correct the allegations pertaining to citizenship of the parties. However, in this case such an amendment would be futile, as the Court concludes that Harrison has failed to establish the jurisdictional amount by a preponderance of the evidence.

## II. Amount in Controversy

The primary issue is whether Harrison has met its burden in establishing by a preponderance of the evidence that the amount in controversy plausibly satisfies the jurisdictional threshold of $75,000.00 for the Court's exercise of diversity jurisdiction. The amount in controversy, in turn, is not "the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation*." McPhail v. Deere & Co*., 529 F.3d 947, 956 (10th Cir. 2008); *see also Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith.").

As set forth above, Plaintiffs have pled that they are entitled to the return of all the money they paid to Defendant, as well as the costs associated with treating Eyra's undisclosed medical

condition, and "all other damages allowable under law, all in amounts to be proven at trial, but in a total amount less than seventy-five thousand dollars." They also submitted a Rule 68 offer of judgment in the amount of $72,191.57. Harrison contends that the amount in controversy is actually greater because Plaintiffs' offer to settle included not only Harrison returning Plaintiffs' money but also Plaintiffs retaining the dog, which Harrison contends has substantial value. Because of this demand, as well as the costs for Eyra's medical care that Harrison asserts must continue to accrue, Harrison argues that more than $75,000 is at issue in this case.

The amount in controversy in this case is governed by principles of contract law. "In an action for breach of contract the party who fails to perform the agreement is justly responsible for all damages flowing naturally from the breach." *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 443, 891 P.2d 1190, 1197 (1995) (citing *Shaeffer v. Kelton*, 95 N.M. 182, 187, 619 P.2d 1226, 1231 (1980)). Damages sustained by the non-breaching party to a contract are based on his expectation interest as measured by

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) of Contracts § 347(a) (1981).

Here, the central issue in dispute is whether the dog, Eyra, satisfied the terms of the contract. If she did not, then Harrison is in breach of the contract and Plaintiffs are entitled to damages. These damages include recovery of the money the Plaintiffs paid to Harrison as well as their expenses in maintaining Eyra. If Plaintiffs prevail by proving that Eyra is not a personal protection dog as promised by Harrison, they would be entitled to recover at most the $72,191.57 set forth in their prior demand. If the factfinder determines that despite Harrison's breach of the

contract the dog has any monetary value (for example, for breeding purposes), and if Plaintiffs wish to keep the dog as a pet, then Plaintiff's recovery of approximately $72,191.57 would be offset by the value of the dog they are keeping. In the alternative, if Plaintiffs seek the remedy of recission of the contract, then they would return Eyra to Harrison and simply recover the $72,191.57. In either event, the amount in controversy is less than $75,000.

Harrison's theory that Plaintffs are demanding more than $75,000 by asking for both their money back and the right to keep the dog ignores the fact that if a jury concludes that the Harrisons are in breach of their duty to provide a well-trained, healthy personal protection dog, that also necessarily means that Eyra is not worth the $50,000 that Plaintiffs paid for her. Stated another way, Plaintiffs prevail and get damages only if Eyra is not worth the money Plaintiffs paid.

The Court concludes that Harrison has not met its burden to show that the amount in controversy exceeds $75,000. Therefore, the Court lacks subject matter jurisdiction over this case, the Court will grant the motion before it and remand this case to state court.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Remand* [Doc. 9] is **GRANTED**, and this case is hereby **REMANDED** to the Second Judicial District Court, County of Bernalillo, New Mexico.

_____
**UNITED STATES DISTRICT JUDGE**